**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| OPTREX AMERICA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-1536 (KAJ) |
| | ) | |
| HONEYWELL INTERNATIONAL INC. | ) | |
| and HONEYWELL INTELLECTUAL | ) | |
| PROPERTIES INC. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF OPTREX AMERICA, INC.'S MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION FOR CONSOLIDATION AND STAY
PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 42**

BOUCHARD MARGULES & FRIEDLANDER, P.A
Andre G. Bouchard (I.D. No. 2504)
Karen L. Pascale (I.D. No. 2903)
  [kpascale@bmf-law.com]
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
  *Attorneys for Plaintiff, Optrex America, Inc.*

*Of Counsel:*

OBLON, SPIVAK, MCCLELLAND,
  MAIER & NEUSTADT, P.C.
Richard D. Kelly, Esq.
Andrew M. Ollis, Esq.
Alexander E. Gasser, Esq.
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000

April 11, 2005

## Table of Contents

I.    SUMMARY ............................................................................................................. 1

II.   BACKGROUND ..................................................................................................... 4

   A.  Nature and Stage of the Proceeding ........................................................................ 4

   B.  Optrex America Inc.'s Business .............................................................................. 6

III.  ARGUMENT ........................................................................................................... 6

   A.  The Court Has Broad Discretion in Deciding Whether to Consolidate or
       Stay a Proceeding ................................................................................................... 6

      1.  Consolidate Actions ...................................................................................... 6

      2.  Stay Proceedings ........................................................................................... 7

   B.  Optrex Does Not Oppose Consolidation of the '1338, '1337, and '1536
       Actions for Purposes of Discovery and Other Pretrial Matters ................................ 8

   C.  It is Not in the Interest of Justice to Stay the Claims Against the
       Manufacturers in Favor of the Claims Against the Customers ................................. 8

   D.  The Facts of This Case and Posture of the Defendants Strongly Favor
       Proceeding First with Trial of Optrex's Case and Staying the Other Cases. .......... 15

   E.  Optrex Will Seek a Short Discovery Period and Early Trial Date ......................... 17

IV.   CONCLUSION ...................................................................................................... 18

## Table of Authorities

**Cases**

*Bechtel Corp. v. Laborers' Int'l Union,*
   544 F.2d 1207 (3d Cir. 1976)..................................................................... 7

*Codex Corp. v. Milgo Elec. Corp.,*
   553 F.2d 735 (1st Cir. 1977)............................................................... 10, 13

*Commissariat a L'Energie Atomique v. Dell Computer,*
   2004 WL 1554382 (D. Del. May 13, 2004)........................................... passim

*Dentsply Int'l Inc. v Kerr Mfg. Co.,*
   734 F. Supp. 656 (D. Del. 1990)........................................................... 9, 10

*Katz v. Lear Siegler, Inc.,*
   909 F.2d 1459 (Fed. Cir. 1990).......................................................... 2, 9, 13

*Loral Fairchild Corp. v. Sony Corp.,*
   181 F.3d 1313 (Fed. Cir. 1999)................................................................ 15

*Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.,*
   208 F. Supp. 2d 344 (E.D.N.Y. 2002). ...................................................... 15

*Ricoh Co. v. Aeroflex Inc.,*
   279 F. Supp. 2d 554 (D. Del. 2003)........................................................... 9

*Rohm & Hass Co. v. Mobil Oil Corp.,*
   525 F. Supp. 1298 (D. Del. 1981)............................................................. 7

*T.J. Smith and Nephew Ltd. v. Ferris Corp.,*
   1987 U.S. Dist. LEXIS 1603 (N.D. Ill. Feb. 27, 1987) ................................. 2

*United Sweetener USA, Inc. v. Nutrasweet Co.,*
   766 F. Supp. 212 (D. Del. 1991).............................................................. 7

*Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.,*
   775 F. Supp. 759, 761 (D. Del. 1991)........................................................ 6

**Statutes**

35 U.S.C. § 284........................................................................................ 13

**Rules**

Fed. R. Civ. P. 42(a) ................................................................................. 6

## I.    SUMMARY

Defendant Honeywell International Inc. and Honeywell Intellectual Properties, Inc. ("Honeywell") have requested this Court to: (1) consolidate Civil Action No. 04-1338-KAJ ("the '1338 action") with this declaratory judgment action ("the '1536 action") and (2) stay the '1536 action following consolidated discovery. Plaintiff Optrex America Inc. ("Optrex") does not oppose consolidation but opposes the request to stay the '1536 action after consolidated discovery.

Honeywell offers two main reasons for its requested stay. The basis for both of Honeywell's reasons quickly dissolves upon closer inspection. Honeywell's request to stay the '1536 action following consolidated discovery should be denied.

Optrex is a distributor or "high level supplier" of OEM flat panel display solutions, such as LCD modules, for an expanding line of products that includes displays for telecommunications and non-PC Internet devices; test, measurement and diagnostic instruments, handheld data management equipment, and automotive and avionics displays. Optrex sells LCD modules, which are the bases for Honeywell's infringement claims, to three of the defendants in these cases. One customer is Kyocera Wireless Corp. ("Kyocera"), a defendant in the '1338 action. Kyocera does not manufacture the alleged infringing LCD modules, but merely incorporates them into end products such as cell phones. ('1338 action, D.I. 114 ¶ 13). Optrex, as a high level supplier of LCD modules, has far superior knowledge and access to information relating to the design, construction, and operation of the LCD modules than its customer Kyocera, and is therefore in a better position to contest the validity, enforceability, and infringement of the patent at issue, U.S. Pat. No. 5,280,371 ("the '371 patent"). In addition, Optrex is

1

strongly motivated to mount a vigorous defense while Kyocera, which seeks indemnification from Optrex, may have far less motivation.

Turning to Honeywell's first argument, there is no hard and fast rule that the first-filed case proceeds first.  There is an exception to the first-to-file rule when the first suit is filed against a customer who is simply a reseller of the accused goods (i.e., does not further manipulate the goods but simply incorporates them into its product "as is"), and the second suit is a declaratory judgment action brought by the manufacturer or higher level supplier of the accused goods. *Katz v. Lear Seigler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990).  "The preference for a manufacturer's action is so strong that it will proceed and the action against the customer will be stayed even through the customer action is filed first." *T.J. Smith and Nephew Ltd. v. Ferris Corp.*, 1987 U.S. Dist. LEXIS 1603 at *4 (N.D. Ill. Feb. 27, 1987) (Ex. 1 hereto).

This Court was recently faced with a very similar issue in *Commissariat a L'Energie Atomique v. Dell Computer*, 03-484-KAJ ("*CEA*") which also concerned LCD modules.  This Court ruled that the litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer.  "Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of CEA's asserted patents." *Commissariat a L'Energie Atomique v. Dell Computer*, 2004 WL 1554382 at *3 (D. Del. May 13, 2004) (Ex. 2 hereto) (*citing Katz v. Lear Siegler, Inc.*, 909 F.2d at 1464).

It would not be in the interest of justice or efficiency to grant Honeywell's request for a stay.  A high level supplier like Optrex is clearly in the best position to defend

against Honeywell's claim of infringement. Optrex understands the technology involved, is intimately familiar with the accused LCD module structure that lies at the heart of the infringement claims, and either has, or has direct access to, information such as technical drawings concerning the Optrex LCD modules in Kyocera products. Optrex is also much more familiar with the prior art and validity issues relating to the LCD module technology than Kyocera and other Optrex customers, who merely purchase the accused LCD modules. A determination that Optrex's LCD modules do not infringe would, of course, be dispositive of any infringement claims against the customers who purchase those modules.

Honeywell's second argument is based upon the assumption that the LCDs infringe and that damages, which would thereafter be determined, should not be based on LCD modules, but on the customers' products, which incorporate the LCD modules. This contention is readily disposed of. As this court pointed out in *CEA*, "[the patentee] will be compensated for any delay it experiences in recovering damages against the remaining defendants by interest on the award." *CEA*, 2004 WL 1554382 at *2. Honeywell may try to argue that the end use of the product is a factor in determining a reasonable royalty. Yet Honeywell provides no explanation as to exactly why proceeding with an LCD manufacturer such as Optrex "*may*" stop Honeywell from receiving full value for its patented technology. Such unsupported speculation is surely not a basis for deciding against the most logical and efficient way of managing the Court's case load. Nevertheless, if the Court believes that Honeywell may be prejudiced, the Court could bifurcate the issues of liability from issues of damages and let liability proceed first in Optrex's case.

Optrex is prepared to proceed to trial as soon as the Court's schedule will reasonably permit. A prompt trial of Optrex's case will at a minimum reduce the issues to be tried in the other cases and may obviate the need for any trial or further proceedings in those cases if, for example, the '371 patent were held invalid. Proceeding with the Optrex case first (even if the cases are consolidated for discovery) strongly favors efficiency and economizes both the Court's and the parties' time and resources.

Therefore, while Optrex does not oppose consolidation of the '1338, '1337, and '1536 actions, it requests that the Court deny Honeywell's motion to stay the '1536 proceeding after the close of consolidated discovery.

## II.    BACKGROUND

### A. Nature and Stage of the Proceeding

On October 6, 2004, Honeywell filed the '1338 action asserting infringement of the '371 patent against 27 companies. Simultaneously, Honeywell filed Civil Action No. 04-1337-KAJ ("the '1337 action") against an additional eight companies for patent infringement of the same '371 patent. Thus, there are presently 35 defendants in the '1338 and '1337 actions. Most of these defendants are customers who purchase the accused LCD modules from various manufacturers. Third party Seiko Epson Corporation ("Seiko"), a manufacturer, has sought to intervene in the '1338 and '1337 actions. ('1338 action, D.I. 136, '1337 action, D.I. 50). Seiko states that it manufactures and supplies allegedly infringing components to more than 25 of the defendants in the two actions. Kyocera has filed a third party complaint in the '1338 action against Optrex, Philips Electronics North America Corp., ("Philips NA") and Wintek Electro-Optics Corp. ("Wintek") based upon indemnification claims. ('1338 action, D.I. 114). Defendant Audiovox Communications Corp. has filed a third party complaint in the

4

'1337 action against Curitel Communications Inc. and Toshiba Corporation. ('1337 action, D.I. 49). In addition, Defendants Nokia Corp. and Nokia Inc. have filed a motion for leave to file a third party complaint against Koninklijke Philips Electronics N.V. ("Philips NV") and Samsung SDI Co. ('1337 action, D.I. 57 & 58).

The '371 patent is entitled "Directional Diffuser for a Liquid Crystal Display." As noted above, Honeywell accused the 35 defendant companies of infringing the '371 patent by manufacturing, importing, offering for sale, or selling products that contain LCDs in the United States. Honeywell also charges that these defendants had the knowledge and intention that these LCDs would be incorporated into products that would be sold in the United States. Honeywell states that such allegedly infringing LCDs are incorporated into products such as: laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions and/or portable game systems ('1338 action, D.I. 1, ¶¶ 37-52; '1337 action, D.I. 1, ¶¶ 17-20).

One of the defendants in the '1338 action is Kyocera. Optrex sells LCD modules to Kyocera. Kyocera asserts that it notified Optrex of Honeywell's claim of infringement of the '371 patent and requested Optrex to honor its obligations to indemnify and defend Kyocera against Honeywell's claims in or about December 2004. ('1338 action, D.I. 114, ¶ 20). Optrex has an interest in defending its LCD modules against the infringement accusations brought by Honeywell. Optrex promptly filed this action in response to Kyocera's request for indemnification. In fact, Optrex filed this action before Kyocera answered Honeywell's complaint. Honeywell answered and counterclaimed, averring that "at least some of the LCD modules manufactured, imported, offered for sale, and/or sold by" Optrex infringe the '371 patent. D.I. 11. Optrex replied. D.I. 13. Soon after,

Honeywell filed this motion to consolidate the '1338 and '1536 actions for purposes of discovery but moved to stay the '1536 action until resolution of the '1338 action. (D.I. 15, '1338 action, D.I. 135). In fact, Honeywell does not oppose consolidation of the '1337 action with the '1338 and '1536 actions. (D.I. 15, p.1 n. 1). Optrex agrees but only opposes the requested stay of the '1536 action.

### B. Optrex America Inc.'s Business

Optrex America Inc. is a high level supplier of OEM flat panel display solutions, such as LCD modules, for an expanding line of products that includes displays for telecommunications and non-PC Internet devices; test, measurement and diagnostic instruments, handheld data management equipment, and automotive and avionics displays. Optrex sells a broad line of LCD modules of various sizes and types. All of the Optrex LCD modules incorporate a relatively small number of structural variations that are relevant to Honeywell's infringement claims. These "off the shelf" LCD modules are offered for sale on Optrex's website — http://www.optrex.com/products. Optrex also fills special orders for LCD modules to address the needs of its customers. Three Optrex customers are defendants in the '1337 and '1338 actions: one of them is Kyocera.

### III.    ARGUMENT

#### A. The Court has Broad Discretion in Deciding Whether to Consolidate or Stay a Proceeding

##### 1. Consolidate Actions

"Rule 42 (a) of the Federal Rules of Civil Procedure gives this Court broad powers to consolidate actions involving common questions of law or fact if, in its discretion, such consolidation would facilitate the administration of justice." *Waste Distillation Tech., Inc. v. Pan Am. Resources, Inc.*, 775 F. Supp. 759, 761 (D. Del. 1991).

Courts should balance the savings of time and effort gained through consolidation against the inconvenience, delay, or expense that it might cause. *Rohm & Hass Co. v. Mobil Oil Corp.*, 525 F. Supp. 1298, 1309 (D. Del. 1981).

### 2. Stay Proceedings

This Court has broad power to stay proceedings. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3d Cir. 1976). In the exercise of its sound discretion, a court may hold one lawsuit in abeyance to abide the outcome of another that may substantially affect it or dispose of the issues. *Id.* When considering a motion to stay, the court should take into consideration the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *CEA*, 2004 WL 1554382 at *1 (*citing United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212, 217 (D. Del. 1991)). Consideration of these factors strongly militates against staying this action. A stay would unduly prejudice Optrex, the non-moving party, because its LCD business would remain under a cloud, thereby subjecting its customers and prospective customers to uncertain liabilities during the pendency of Honeywell's infringement claims. A stay would not simplify the issues and trial. Moreover, discovery has not even begun nor has a trial date been set.

**B. Optrex does not Oppose Consolidation of the '1338, '1337, and '1536 Actions for Purposes of Discovery and Other Pretrial Matters**

There will be significant savings of resources and greater convenience if all three actions are consolidated for purposes of discovery. The gravamen of all three cases is the alleged infringement of the '371 patent by the defendants. Each case will require similar discovery to prove or refute the allegations of infringement, invalidity, and unenforceability of the '371 patent. Therefore, there are common issues of law and fact among the three cases. The Court has in fact recognized these efficiencies by ordering a joint scheduling conference for all three cases on May 16, 2005. ('1338 action, D.I. 138, '1337 action, D.I. 51; and '1536 action, D.I. 16.).

**C. It is Not in the Interest of Justice to Stay the Claims Against the Manufacturers in Favor of the Claims Against the Customers**

It is well recognized that litigation brought by a manufacturer or higher level supplier, such as Optrex here, takes precedence over a prior-filed suit brought by the patent owner against the manufacturer's or supplier's customers. In *CEA*, this Court said:

> It is common practice to stay all pending [patent] litigation except the first suit between the patent owner and a manufacturer or a higher level supplier. Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of CEA's asserted patents. At the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit. It is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products.

*CEA*, 2004 WL 1554382 at \*3 (citations omitted). This Court continued:

> Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case. If, for example, CEA's patents were found invalid or the manufacturers would found to be not infringing, then there would be no need to proceed against the

> OEM/distributors or retailers, thus conserving judicial resources and
> expense to the parties.

*Id.*

The '1338 and '1337 actions are at their heart "customer suit" cases. Under *Katz*,
a manufacturer's or higher level supplier's declaratory judgment suit should be given
preference over a patentee's suit against the manufacturer's customers when those
customers are being sued for their ordinary use of the manufacturer's products. *Ricoh
Co. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003).

Honeywell's reliance on *Dentsply Int'l Inc. v Kerr Mfg. Co.*, 734 F. Supp. 656 (D.
Del. 1990) is misplaced and does not support Honeywell's request for a stay against
Optrex. In *Dentsply*, Dentsply sued Kerr, the exclusive licensee of the manufacturer, for
trademark and patent infringement. Five months after the original suit was filed, the
manufacturer and Kerr's licensor, Centrix, filed suit alleging the same affirmative causes
of action as the licensee in response to the trademark and patent infringement claims.
The court, after agreement of Dentsply and Kerr, assigned a trial date. Thereafter, Kerr
sought to consolidate the trademark claims into one suit and the patent claims into
another. Centrix instead requested a stay of the earlier Dentsply-Kerr action, which had
been set for trial, so that its action would go first. *Dentsply*, 734 F. Supp. at 658.

The Court denied Centrix's request giving several reasons; none of which apply to
this case. First, the court noted that Centrix's request to stay the earlier action "will
forestall the trial date agreed upon [...] and result in prejudice to Dentsply." *Id.* No such
situation exists here. No trial date has been set. Because the stay Centrix requested
would forestall the agreed upon trial date, the court held that Centrix "must make a
showing of 'a clear case of hardship or inequity' before the Court can enter a stay order."

*Id.* Centrix waited five months before filing its action, giving no justification for the delay. The court said it "will not elevate Centrix's failure to address its concerns in a timely fashion to an example of hardship warranting a stay." *Id.* at 659. Here, the time between when Kyocera notified Optrex of its intention to file suit seeking indemnification and the filing of this case at bar was less than one month and only about two months after Honeywell filed the '1338 action. Kyocera did not even answer Honeywell's complaint or file its third party action against Optrex until after Optrex filed its declaratory judgment action. Therefore, there is no inexcusable delay by Optrex. Second, Centrix merely wanted to have its later-filed action tried first and cited to the line of "customer suit" cases. The *Dentsply* court noted that while this argument finds support in the case law, the court concluded "on the facts present here that a stay is unwarranted." *Id.* Here, as fully argued hereinafter, there are good reasons of efficiency, judicial economy, and simplicity that support a stay as to the claims against the customers and OEM/distributors.

Honeywell's claim of a "special interest" in proceeding against the customers first, is inapposite. *Codex Corp. v. Milgo Elec. Corp.,* 553 F.2d 735, 736 n. 6 (1st Cir. 1977). In *Dentsply*, the "special interest" involved only an exclusive licensee, Kerr, as a customer and the sole vendor of the accused products, and Centrix, the licensor and manufacturer of Kerr's products. *Dentsply*, 734 F. Supp. at 660. The court declined to apply the "customer suit" exception stating that "Dentsply, has a 'special interest' in proceeding against a customer when, such as in Kerr's case, the customer is the sole vendor of the product." *Id.* Thus, there was no efficiency or simplification to be gained by allowing the later-filed manufacturer's claims to go first.

The positions of the parties here are dramatically different from those in *Dentsply*. Here there are at least 35 defendants, who are an amalgam of retailers, OEMs, component product manufacturers, manufacturers who incorporate these component products, and/or distributors of these component products and end products incorporating the component products; and all are believed to be customers of the manufacturers or suppliers (whether internal or external) of the allegedly infringing LCD modules.[1] Whether or not the LCD modules infringe and whether or not the '371 patent is valid and enforceable are the true central issues in each of these cases. Each customer incorporates the purchased LCD module into another larger product. The LCD module is merely a component of the customers' product. Such customers do not have the intimate knowledge of the design and structure of the LCD modules, which is necessary to best contest the issues of validity, enforceability, and infringement of the '371 patent. Therefore, the so-called "special interest" reasoning in *Dentsply* does not apply here.

Honeywell's requested stay would unduly complicate these proceedings. Honeywell's patent claims are limited to LCD displays (modules), and the issue of infringement or non-infringement will turn *only* on the comparison of the '371 patent claims with the construction of each manufacturer's LCD module. While Honeywell has sued 35 customers who incorporate the purchased LCD modules into one or more different consumer end products, the issue of infringement will *not* depend on the nature or construction of these end products — e.g., laptop computers, cellular phones, PDAs, digital still cameras, video cameras, portable DVD players, portable televisions, and/or portable game systems. Only the structure of a particular supplier's LCD module will

---

[1]  Optrex also understands that a few of the 35 defendants, in addition to being LCD module customers, also manufacture some LCD modules.

determine the infringement/liability issue. Thus, while there are only a few different manufacturers and, likely, only a few different LCD module constructions with respect to the claim elements in the '371 patent, there are many more customers, each of whom incorporates the accused modules into different versions of one or more of at least eight different types of end products. Consequently, if Honeywell has its way and the relatively few manufacturer/high-level supplier actions were stayed, the Court would be compelled to try some 35 customer actions involving different versions of more than eight different types of complex end products. In contrast, trial of the issue of infringement of the '371 patent by Optrex's LCD structures would involve only Optrex's accused LCD structures. The same would, of course, be true of the trial of the other supplier/manufacturer cases. It is thus clear that this complex litigation will be greatly streamlined and simplified by first adjudicating the LCD supplier/manufacturer claims, such as Optrex's declaratory judgment action.

Honeywell's other arguments for a stay are without merit. Honeywell is patently wrong in arguing that its decision to sue only LCD customers who incorporated the LCDs into more expensive and complex end products was an attempt to avoid complication. Honeywell targeted customers rather than suppliers of the LCDs for two reasons. First, customers as compared with suppliers were the least able and, if indemnified by the supplier against infringement claims, the least motivated to mount vigorous non-infringement, invalidity, and unenforceability defenses. *CEA*, 2004 WL 1554382 at *3. Second, Honeywell hoped that an enhanced damage basis could be asserted because of the substantially higher dollar value of the customers' end products (laptop computers,

cellular telephones, cameras, etc.), of which the LCD modules are only a minor, relatively low-cost component.

Honeywell's alleged "special interest" in pursuing the customers first, due to its effect on recovering damages now, is likewise unpersuasive. (D.I. 15, pp. 8-9.)  Indeed, it is contrary to the overriding principle that "litigation against or brought by the manufacturer of infringing goods takes precedence." *Katz*, 909 F.2d at 1464.  Honeywell argues that it "may be denied full value for its technology if it is forced to proceed against LCD module manufacturers like Optrex without regard to how these modules are actually being used." (D.I. 15 at 9.)  "Full value" would not be lost to Honeywell if its request were not granted.  If the claims against the manufacturers or higher level suppliers proceed first and Honeywell prevails, Honeywell can be adequately compensated for its delayed recovery through interest on the possible award from the OEM/distributors and retailers. *CEA* 2004 WL 1554382 at *2.  In addition, the patent statute provides that if Honeywell successfully proves its liability case, "the court shall award the claimant damages adequate to compensate for the infringement." 35 U.S.C. § 284.  Honeywell provides no explanation as to why trial of the Optrex case first would circumvent the statute's mandate that Honeywell be adequately compensated for any infringement.[2]

Honeywell's "special interest" would be prejudicial to the defendants because "in reality, the manufacturer is the true defendant in the customer suit." *Codex,* 553 F.2d at 737-38.  Honeywell attempts to transform the customer defendants into manufacturers, arguing:

---

[2]  As noted above, Honeywell may try to argue that the use of the LCD modules within a final product should be a factor in determining an appropriate royalty should liability be found.  Optrex submits that other factors, such as the cost of a design-around, are relevant.

> Here, the accused infringers are in no way merely customers — they are actual manufacturers and sellers of the products alleged to infringe the '371 patent. Kyocera, in fact, admitted in its answer that it imports, assembles, offers for sale and sells the accused products.

D.I. 15 at p. 8.

Presumably by focusing on what "the customer" does with respect to the accused LCD modules, Honeywell hopes to have the customers it sued considered manufacturers and thereby avoid the rule that litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer. The Court should not be misled by Honeywell's attempt to blur just what its customers do with respect to the accused LCD modules.

The '371 patent is directed to, and claims, LCD displays [i.e. modules]. The '371 patent does not claim the various consumer products identified in Honeywell's complaint. Customers, like Kyocera, do not manufacture the LCD modules, which are the sole basis for Honeywell's infringement claims against them. Rather, they incorporate the LCD modules that they purchase into larger products such as cellular telephones, computers, etc.; i.e., they manufacture the larger devices in which the accused LCD modules are components. While, for the reasons noted above, the 1990 decision in the *Dentsply* case does not support staying the Optrex action, it would seem that Honeywell is attempting to avoid the precedent of the recent 2004 decision by this Court in *CEA*.

If the Court wishes to address Honeywell's concern[3] about recovering the "full value for its technology," the Court can bifurcate issues of liability from issues of the

---

[3]  Optrex notes that Honeywell has announced license agreements with three major LCD manufacturers: LG Philips, Samsung Electronics, and NEC LCD Technologies. '1338 action D.I. 153 Ex. 1. Honeywell's negotiation of royalty agreements with LCD manufacturers, knowing that those licenses preclude any further recovery from customers who use the LCDs in end products, demonstrates that Honeywell can recover what it regards as the "full value for its technology" from LCD manufacturers.

calculation of damages. The trial court in *Loral Fairchild Corp. v. Victor Co. of Japan, et al.*, Civ. A. Nos. 92-0128-ARR and 91-5056-ARR (E.D.N.Y.), is an example. Loral alleged infringement of a patent directed at a process for manufacturing a charge-coupled device (CCD) that is a component in electric cameras. The court severed and stayed Loral's claims against the customer defendants who incorporated the CCDs into their end products and proceeded to trial against selected manufacturers of the CCDs. The court also bifurcated the issue of damages for a later adjudication, if necessary. In one trial, one manufacturer did not infringe. *Loral Fairchild Corp. v. Sony Corp.*, 181 F.3d 1313 (Fed. Cir. 1999). In a second trial, another manufacturer proved that the patent was invalid. *Loral Fairchild Corp. v. Victor Co. of Japan, Ltd.*, 208 F. Supp. 2d 344 (E.D.N.Y. 2002). In the end, the issue of damages was never addressed.

### D. The Facts of this Case and Posture of the Defendants Strongly Favor Proceeding First with Trial of Optrex's Case and Staying the Other Cases.

The facts and posture of the parties are strikingly similar to those in the *CEA* case. In that case, this Court faced a patentee, CEA, suing over 60 defendants on a single patent concerning LCD technology. CEA classified the defendants into three categories: module manufacturers, original equipment manufacturers/distributors, and retailers. *CEA*, 2004 WL 1554382 at *1. CEA requested that this Court consolidate the cases for discovery, pretrial, and trial purposes. *Id.* The defendants requested that this Court allow the case against the manufacturers to go forward while issuing a stay for the retailers. This Court granted CEA's request for consolidation in part but declined to consolidate the retailer action with the manufacturer action. *Id.* at *2. This Court granted the defendants' motion to stay the action against the retailers, distributors, and OEMs applying the factors enumerated in *United Sweetener*. *Id.*

15

The same reasoning used in the *CEA* case directly applies here. First, Honeywell will not be unduly prejudiced or put at a tactical disadvantage if the claims against the manufacturers and/or higher level suppliers were adjudicated first. On the other hand as noted above, a stay would prejudice Optrex and place it at a tactical disadvantage because its LCD business with current and potential customers would remain under threat. Moreover, Optrex would be at a distinct tactical disadvantage if its fate were in the hands of a customer who has neither the knowledge nor information to best assert the defenses of non-infringement, invalidity, and unenforceability. Indeed, a customer such as Kyocera, who is claiming indemnification from Optrex, would not have the same motivation to strenuously contest validity, infringement, and enforceability so as to avoid liability.

Judicial economy and efficiency are strongly favored by an early trial proceeding first with the manufacturers and/or higher level suppliers who are best qualified to address both infringement and validity of the '371 patent. The only "prejudice" asserted by Honeywell is the speculation that "Honeywell may be denied full value for its technology if it is forced to proceed against LCD module manufacturers like Optrex without regard to how these modules are actually being used." (D.I. 15, p. 9.) Honeywell's concern ignores the salutary reasons cited by this Court in *CEA* for permitting Optrex to proceed to trial first - "[s]hould CEA prevail in this case, it will be compensated for any delay it experiences in recovering damages against the remaining defendants by interest on the award." *CEA*, 2004 WL 1554382 at *2.

Second, moving forward on the claims against the manufacturers would simplify the issues and trial of the case. Honeywell's arguments that "prioritizing" trial of

Optrex's action would introduce a host of additional and complicating issues are just wrong. (D.I. 15 at 9-10.) The controlling, central, and only issues between Optrex and Honeywell are the issues of infringement, invalidity, and unenforceability of the '371 patent. Optrex requires only a short discovery period in order to be ready for an early trial. An early trial would at the very least reduce, simplify, and focus the issues that remain for trial of the customer actions and may well obviate the need for any additional trials, if the '371 patent is held invalid or unenforceable. Honeywell's references to "potential complexities" and the "intricacies of indemnification" are nothing more than red herrings, created in order to avoid a trial against Optrex. Since indemnification is not an issue in this action, it is a simple patent infringement case. Honeywell is acutely aware that Optrex is in a much better position than customers, such as Kyocera, to contest issues of infringement, invalidity, and unenforceability of the '371 patent. If the '371 patent is held invalid and/or unenforceable that will be the end of this litigation – all of it. If the patent is held not to be infringed by Optrex's LCD modules, that decision will also end the litigation.[4] A decision in Honeywell's favor on all issues – infringement, validity, and enforceability is also likely to at least simplify and eliminate many issues for trial in the remaining customer actions.

The last two *United Sweetener* factors are inapplicable. No discovery has begun and no trial date has been set.

### E. Optrex Will Seek a Short Discovery Period and Early Trial Date

Optrex will seek a short discovery schedule followed by trial as soon as the Court's schedule will reasonably permit. Optrex will not require extended discovery

---

[4]  It is believed that a proper interpretation of the '371 patent claims will lead to a finding of non-infringement as to the accused LCD modules.

because, for example: (1) there is only one patent asserted containing only three claims, (2) there is a small universe of people and corporations to be deposed and discovery to be requested [*e.g.* there are only three inventors and the two Honeywell companies], and (3) there are a limited number of accused products based upon a limited number of LCD structures. The Optrex LCD modules are based upon only a few different LCD structures relevant to Honeywell's infringement claims. Prolonging Honeywell's impending infringement claims against Optrex's LCD modules would also have a damaging impact on Optrex's ability to continue and expand its marketing of its LCD modules to its other customers. If the Court does consolidate these three cases, Optrex urges the Court to set a short discovery period with the earliest available trial date for at least the Optrex action in the interest of justice, efficiency, and fairness.

## IV.    CONCLUSION

For the foregoing reasons, Optrex respectfully requests that the Court:    (1) consolidate the '1338, '1337, and '1536 actions for purposes of discovery and other pretrial purposes, (2) deny Honeywell's request to stay the '1536 after the consolidated discovery period, and (3) provide Optrex with an early trial date.

BOUCHARD MARGULES & FRIEDLANDER, P.A.

April 11, 2005                              /s/ Karen L. Pascale
                                    _____
                                    Andre G. Bouchard (#2504)
                                    Karen L. Pascale (#2903)
                                     [kpascale@bmf-law.com]
                                    222 Delaware Avenue, Suite 1400
                                    Wilmington, DE  19801
                                    (302) 573-3500
                                     *Attorneys for Plaintiff, Optrex America, Inc.*

18

*Of Counsel:*

Richard D. Kelly, Esq.
Andrew M. Ollis, Esq.
Alexander E. Gasser, Esq.
OBLON, SPIVAK, MCCLELLAND,
  MAIER & NEUSTADT, P.C.
1940 Duke Street
Alexandria, VA 22314
(703) 413-3000

# TAB 1

T. J. SMITH AND NEPHEW LIMITED, Plaintiff, v. FERRIS CORPORATION and AMERICAN
HOSPITAL SUPPLY CORPORATION, PHARMASEAL DIVISION, INC.,Defendants
No. 86 C 5461

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

1987 U.S. Dist. LEXIS 1603

February 27, 1987, Decided; March 2, 1987, Filed

CASE SUMMARY:

PROCEDURAL POSTURE: Defendants, the two corporations, made motions to stay plaintiff patent holder's action
alleging patent infringement with respect to a reissue patent for moisture-vapor permeable pressure-sensitive
adhesive materials. The patent holder also made claims against the second corporation for trademark infringement,
unfair competition, and violation of the Illinois sales statute, based on markings on the corporation's adhesive
dressing.

OVERVIEW: The first corporation sold the majority of its adhesive dressing products to the second corporation for
resale. The first corporation's products and the balance of the second corporation's products were manufactured by
third parties with whom the patent holder was currently involved in litigation. Upon consideration, the court granted
the first corporation's motion to stay and granted the second corporation's motion to stay in part and denied it in part.
The court held that, in patent infringement litigation, an action against a customer would be stayed so that an action
against a manufacturer could take precedence. The court determined that the action against the first corporation should
be stayed as it was a customer, although the scope of the litigation against the manufacturer was unclear. The
court also found that the second corporation was a customer and that a stay was proper as significant discovery had
been completed in the action against the manufacturer. However, the court held that the additional claims against the
second corporation, including one for unfair competition, were not encompassed by other pending litigation and,
thus, could not be stayed.

OUTCOME: The court granted the corporations' motions to stay the patent holder's action for patent infringement.
However, the court denied the second corporation's motion to stay with respect to the patent holder's claims for
trademark infringement, unfair competition, and violation of the Illinois sales statute, based on markings on the
corporation's adhesive dressing.

LexisNexis(R) Headnotes

OPINIONBY: [*1]

KOCORAS

OPINION: MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Defendants Ferris Corporation ("Ferris") and American
Hospital Supply Corporation ("AHS") have filed separate
motions to stay. For the following reasons, Ferris's
motion is granted and AHS's motion is granted in part
and denied in part.

FACTS

Plaintiff T. J. Smith and Nephew Ltd. ("Smith &
Nephew") holds Reissue Patent No. Re 31,887 ("the '887
reissue patent") which covers moisture-vapor permeable
pressure-sensitive adhesive materials. Shortly after
receiving the reissue patent in May 1985, Smith &
Nephew filed seven lawsuits in various district courts
alleging infringement of the '887 reissue patent. Of those
seven lawsuits, only two are relevant here. In the District
of Delaware, Smith & Nephew sued Pfizer Hospital
Products Group, Inc. ("Pfizer"), alleging that certain
wound dressing products manufactured by Pfizer and
sold under the trademark "UNIFLEX" infringed on the
reissue patent. Smith & Nephew filed suit in the
Northern District of New York against Consolidated
Medical Equipment, Inc. ("ConMed"), based on

ConMed's sale of a product manufactured by Avery International Corporation. Avery later intervened[*2] in the suit against ConMed.

In July 1986, Smith & Nephew filed this action which contains patent infringement claims against both Ferris and AHS and related claims against AHS. Smith & Nephew's claim against Ferris stems from the marketing of moisture-vapor permeable adhesive dressings which it converts from base materials supplied by Avery. According to Ferris, ninety-eight percent of its adhesive dressing products are unbranded products sold to AHS for resale under the AHS trade name "Pharmaseal." The remaining two percent of Ferris's adhesive dressings are sold under the name "Dynaderm" to AHS and other customers.

The patent infringement claim against AHS arises from AHS's sale of Pharmaseal, Dynaderm, and the UNIFLEX product supplied by Pfizer. In addition, Smith & Nephew have brought claims for trademark infringement, unfair competition, and violation of the Illinois sales statute, based on markings on the Pharmaseal dressing.

Ferris has moved to stay the claim against it pending resolution of the action against Avery in the Northern District of New York. Similarly, AHS's motion seeks a stay pending resolution of the Delaware action against Pfizer.

DISCUSSION

The issuance[*3] of a stay under these circumstances is committed to the sound discretion of the district court. *Kennametal, Inc. v. Spec Tool Co., 215 U.S.P.Q. 1158, 1158 (W.D. Mich. 1981); Kistler Instrumente A.G. v. PCB Piezotronics, 419 F. Supp. 120, 123 (W.D.N.Y. 1976)*. Several rules have evolved, however, which guide the district courts in the exercise of their discretion. The suit filed first ordinarily takes priority. *Hemstreet v. Spiegel, Inc., 211 U.S.P.Q. 598, 598 (N.D. Ill. 1978)*. In addition, a patent infringement action in which the manufacturer of the accused product is a party should take precedence over an action involving the manufacturer's customer. *Kennametal, 215 U.S.P.Q. at 1158* (citing *William Gluckin & Co. v. International Playtex Corp., 407 F.2d 177 (2d Cir. 1969))*. An action against the manufacturer is preferred because:

[t]he manufacturer is clearly in the best position to either defend against a claim of infringement or to affirmatively assert invalidity of the holder's patent. Presumably it is the manufacturer who has the more detailed knowledge regarding the claim of infringement, the expertise in the area, and the primary interest in the outcome[*4] of the litigation.

Id. The preference for a manufacturer's action is so strong that it will proceed and the action against the customer will be stayed even through the customer action is filed first. *Wehr Corp. v. Commercial Construction Corp., 464 F. Supp. 676, 677 (S.D. Fla. 1979); Hemstreet, 211 U.S.P.Q. at 599*. With these general principles in mind, the court will address the motions before it.

Ferris's Motion to Stay

There appears to be no dispute that Ferris purchases from Avery a product known as MED 5020 which it converts to Dynaderm and the unbranded product eventually sold as Pharmaseal. Thus, there is no question that the action against Ferris is a customer suit. The parties disagree, however, over whether the action pending in New York is the relevant manufacturer action to which this court should defer. The confusion apparently arises because of the procedural posture of the New York suit. As previously noted, Smith & Nephew originally brought the New York action against ConMed. The accused product sold by ConMed is converted from a base material known as MED 5025 manufactured by Avery. As the manufacturer of MED 5025, Avery intervened in the action [*5] against ConMed. The parties to this action, and apparently the parties to the New York action as well, disagree on whether the scope of the New York suit now includes all moisture-vapor permeable dressings produced by Avery, ten in number, including MED 5020, which potentially infringe on the '887 reissue patent or whether that suit is limited to MED 5025.

While it is difficult to believe that the attorneys to the New York suit cannot themselves agree on the scope of that litigation, the court finds that this action should be stayed pending resolution of the New York case regardless of whether MED 5020 is among the accused products in that case. Under *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313 (1971)*, a plaintiff in a patent infringement action whose patent was declared invalid in a prior proceeding is collaterally estopped from relitigating the validity of that patent in a subsequent action. Thus, if the New York court declares the '887 reissue patent invalid, there will be no need to litigate any of the patent infringement claims in this suit. Concurrent litigation here and in New York with respect to the validity of the '887 reissue [*6] patent would be duplicitous and a waste of the court's and the parties' time and energy.

Of course, if the New York court finds the '887 reissue patent valid and infringed by MED 5020 or MED 5025, that finding is not binding on Ferris. As a practical

matter, however, a finding that MED 5020 infringes on the *'887* reissue patent may be dispositive of this case as the parties are more likely to settle. But the same may also be true if the New York court finds MED 5025 infringes the reissue patent, as the two products are similar in many respects. Therefore, Ferris's motion to stay the patent infringement claim against it pending resolution of the claims against Avery in the Northern District of New York is granted.

### AHS's Motion to Stay

Smith & Nephew's patent infringement claim against AHS based on AHS's sale of UNIFLEX presents a textbook example of a customer action which should be stayed in deference to a manufacturer action. In addition, Smith & Nephew's suit against Pfizer was filed fourteen months prior to the filing of this suit, and substantial discovery, including depositions here and abroad and the production of thousands of documents, has been completed. Given that the [*7] court has concluded that Smith & Nephew's claim against Ferris should be stayed, the patent infringement claims against AHS based on AHS's sale of Ferris's products, Pharmaseal and Dynaderm, should also be stayed. Thus, AHS's motion to stay is granted as to the patent infringement claims set forth in Count I.

Smith & Nephew has brought three additional claims -- claims of trademark infringement, unfair competition, and violation of the Illinois sales statute -- against AHS, stemming from markings on the Pharmaseal product which are allegedly similar to the green tabs used by Smith & Nephew on its own dressing. According to the plaintiff, the issues raised by these claims are not encompassed by any of the pending actions involving the *'887* reissue patent. Thus, these claims cannot be disposed of by any of the pending actions and must inevitably be resolved by this court. The interests of justice would not be served by staying these claims. Therefore, the motion to stay is denied as to these claims, set forth in Counts II, III, and IV. See *Kistler, 419 F. Supp. at 123-24* (granting stay as to patent infringement claims at issue in another action, but denying as to misappropriation[*8] of confidential information, unfair competition, and counterclaims).

Charles P. Kocoras, United States District Judge

# TAB 2

**Westlaw.**

Slip Copy
2004 WL 1554382 (D.Del.)
**(Cite as: 2004 WL 1554382 (D.Del.))**

Page 1

**H**
Motions, Pleadings and Filings

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.

COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
DELL COMPUTER CORPORATION, et al.,
Defendants.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
TOTTORI SANYO ELECTRONIC CO., LTD.,
Defendant.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
BEST BUY CO. OF MINNESOTA, INC., et al.,
Defendants.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
FUJITSU LIMITED, et al., Defendants.
COMMISSARIAT A L'ENERGIE ATOMIQUE,
Plaintiff,
v.
TATUNG COMPANY, et al., Defendants.
**No. Civ.A. 03-484-KAJ, Civ.A. 03-857-KAJ,
Civ.A. 03-931-KAJ, Civ.A. 03-1036-
KAJ, Civ.A. 04-99-KAJ.**

May 13, 2004.

Richard D. Kirk, Morris, James, Hitchens &
Williams, Wilmington, DE, for Plaintiffs and
Counter-Defendant.

Richard L. Horwitz, Potter Anderson & Corroon,
LLP, Wilmington, DE, for Defendants and Counter-
Claimant.

William J. Marsden, Jr., Fish & Richardson, P.C.,
Robert H. Richards, III, William J. Wade, Richards,
Layton & Finger, M. Duncan Grant, Pepper Hamilton
LLP, Josy W. Ingersoll, Young, Conaway, Stargatt &
Taylor, Jeffrey S. Goddess, Rosenthal, Monhait,

Gross & Goddess, Wilmington, DE, for Defendants.

*MEMORANDUM ORDER*

JORDAN, J.

I. INTRODUCTION

**\*1** Presently before me are several Motions to
Consolidate filed by plaintiff, Commissariat à
l'Énergie Atomique ("CEA"), in the following patent
infringement cases currently pending in this court:
*CEA v. Dell Computer Corp., et al.,* Civ. No. 03-484-
KAJ (D.Del. May 19, 2003) (Docket Item ["D.I."] 89,
D.I. 142); *CEA v. Tottori Sanyo Electronic Co., Ltd.,*
Civ. No. 03-857-KAJ (D.Del. Sept. 4, 2003) (D.I.10,
D.I.27); *CEA v. Best Buy Co., et al.,* Civ. No. 03-931-
KAJ (D.Del. Oct. 6, 2003) (D.I.48, D.I.81); and *CEA
v. Fujitsu Ltd.,* Civ. No. 03-1036-KAJ (D.Del. Nov.
13, 2003) (D.I.14). Also before me are Motions to
Stay the Case filed by the defendants in Civ. No. 03-
484-KAJ (D.I.93); Civ. No. 03-931-KAJ (D.I.47);
and *CEA v. Tatung Co., et al.,* Civ. No. 04-099-KAJ
(D.Del. Feb. 13, 2004) (D.I.16). For the reasons that
follow, CEA's Motions to Consolidate will be granted
in part and denied in part and the defendants' Motions
to Stay the Case will be granted.

II. BACKGROUND

CEA alleges, in all of the cases listed above, that the
defendants are infringing its U.S. Patent No.
4,701,028 ("the '028 patent") and U.S. Patent No.
4,839,412 ("the '412 patent"), which claim certain
liquid crystal display ("LCD") technology. (D.I. 90 at
3.) [FN1] CEA categorizes the defendants by entity,
as follows: module manufacturers, original
equipment manufacturers/distributors
("OEM/distributors"), and retailers. (D.I. 186 at
11:18-12:17.) In all, CEA has sued over 60
defendants on the same patents. (*Id.* at 15:6-11.) CEA
would like the cases against all these defendants
consolidated for discovery, pretrial, and trial
purposes. (*Id.* at 17:18- 18:2.)

> FN1. For ease of reference, and because
> plaintiffs and defendants essentially make
> the same arguments in all of their motions, I
> will cite the docket items associated with
> *CEA v. Dell Computer Corp., et al.,* Civ.
> No. 03-484-KAJ, and the transcript from the

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 2
2004 WL 1554382 (D.Del.)
(Cite as: 2004 WL 1554382 (D.Del.))

hearing on the parties' motions (D.I.186), unless otherwise noted. CEA did not file Motions to Consolidate in *CEA v. Tatung Co., et al.* and *CEA v. Sharp Corp., et al.*, Civ. No. 04-231-KAJ (D.Del. Apr. 13, 2004), which also allege infringement of the '028 and '412 patents. CEA also has a patent infringement case against Chi Mei Optoelectronics Corporation pending in the Northern District of California. (D.I. 186 at 9:20-23.)

At the hearing on the parties' motions, the defendants in all of the cases advanced a unified position in response to CEA's Motions to Consolidate. [FN2] (*Id.* at 20:3-12.) The defendants would like the case to go forward against the LCD module manufacturers only, those parties being Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo, and for the case to be stayed against all remaining defendants. (*Id.* at 20:15-21:1; 43:12-18.)

> FN2. From this point forward, any reference herein to "the defendants" means those defendants who were represented at the April 20, 2004 hearing. This does not include the defendants in *CEA v. Tatung Co., et al.* or the defendants in *CEA v. Sharp Corp., et al.* (*See* D.I. 186 at 21:9- 19.)

### III. STANDARD OF REVIEW

In general, a district court has broad discretion when deciding whether to consolidate or stay proceedings. *See* Fed.R.Civ.P. 42(a); *Bechtel Corp. v. Laborers' International Union,* 544 F.2d 1207, 1215 (3d Cir.1976). Federal Rule of Civil Procedure 42 provides that, "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay." Fed.R.Civ.P. 42(a) (2004).

The power to stay proceedings "is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Cheyney State College Faculty v. Hufstedler,* 703 F.2d 732, 738 (quotation omitted). When considering a motion to stay, the court considers the following factors: (1) whether a stay

would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set. *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

### IV. DISCUSSION

#### A. CEA's Motion to Consolidate

**\*2** CEA argues that, because the pending actions involve the same patent, they necessarily have common questions of law and fact, and that this court "routinely grants motions to consolidate when two actions are pending that involve the same or similar patents." (D.I. 90 at 4-5.) CEA also argues that consolidation is appropriate when a single plaintiff has filed multiple actions in the same court (*id.*), particularly where, as here, the cases involve the same patents, the same infringing products, and the same distribution chain (*id.* at 6).

At the April 20, 2004 hearing, the defendants proposed that the case go forward against the LCD module manufacturers, specifically, Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo. (D.I. 186 at 20:15-21:1.) CEA argued that the retailer action, *CEA v. Best Buy Co., et al.,* Civ. No. 03-931-KAJ, should be consolidated with the manufacturer actions, the main reason being that haling the retailers into this court will force the manufacturers to consent to jurisdiction in order to defend their products. (*Id.* at 49:25-50:19.)

Because the defendants did not object to consolidating the cases against Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo at the hearing (*see id.* at 22:2-6), and because the cases involve common questions of law and fact pertaining to infringement of the '028 and '412 patents, those cases will be consolidated for all pretrial and trial purposes, without prejudice to any of the manufacturers filing a motion to sever from the others at trial, once the pretrial matters are concluded. However, I will not consolidate the retailer action with the manufacturer cases. CEA has not come forward with any compelling reason why the case against the retailers should proceed in lockstep with the cases against the manufacturers. Therefore, CEA's Motions to Consolidate will be granted in part and denied in part; they are granted to the extent that they seek to consolidate the Samsung Electronics, Fujitsu Display Technologies Corporation, and Tottori Sanyo module manufacturers, and denied to

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
2004 WL 1554382 (D.Del.)
(Cite as: 2004 WL 1554382 (D.Del.))

Page 3

the extent that they seek to consolidate the remaining defendants.

B. Defendants' Motions to Stay the Case

Defendants argue that CEA's case against the OEM/distributors and retailers should be stayed pending resolution of the case against the manufacturers. (D.I. 94 at 5; D.I. 186 at 41:23-42:11.) CEA responds that it would be unduly prejudiced and placed at a tactical disadvantage if a stay were granted, and that granting a stay as to the retailers would not simplify the issues in this case. (D.I. 106 at 4-6.) Applying the factors enumerated in *United Sweetener, supra,* I find that it is appropriate to stay the case against the OEM/distributors and the retailers pending the outcome of the case against the manufacturers.

First, CEA has not articulated, in its papers or at the hearing (*see* D.I. 186 at 25:24-29:4) any real prejudice or tactical disadvantage that it would suffer if the proceedings against the OEM/distributors and retailers are stayed. *See United Sweetner, 766 F.Supp. at 217.* CEA asserts that a stay would "substantially delay" its right to adjudicate its claims against the remaining defendants and that it would be most efficient for the court and the parties "to take discovery and present arguments in this case only one time and not through delayed piecemeal litigation." (D.I. 106 at 5.) Should CEA prevail in this case, it will be compensated for any delay it experiences in recovering damages against the remaining defendants by interest on the award. CEA also argues that, should a preliminary injunction be entered against the manufacturers, [FN3] the injunction would not be broad enough to encompass the retailers if the case against them is stayed. (D.I. 186 at 35:7-36:4.) Such a speculative argument, on its own, does not demonstrate enough prejudice to outweigh the remaining factors in favor of granting a stay. Furthermore, and as explained more fully below, staying the case against the remaining defendants may streamline the case and avoid piecemeal litigation altogether.

> FN3. CEA has filed Motions for a Preliminary Injunction in *CEA v. Dell* (D.I.58) and *CEA v. Tottori Sanyo* (D.I.18).

**\*3** Although CEA argues that granting a stay would not simplify the issues pending against the retailers, "[i]t is common practice to stay all pending [patent] litigation except the first suit between the patent owner and a manufacturer or a higher level supplier."

David F. Herr, *Annotated Manual for Complex Litigation,* § 33.63 (3d ed.2003); *see also Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed.Cir.1990) ("litigation against or brought by the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer"). Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of CEA's asserted patents. Resolving these issues prior to proceeding against the OEM/distributors and retailers would surely simplify this case. If, for example, CEA's patents were found invalid or the manufacturers would found to be not infringing, then there would be no need to proceed against the OEM/distributors or retailers, thus conserving judicial resources and expense to the parties. [FN4]

> FN4. As to the final two *United Sweetener* factors, discovery is not complete in any of the cases, and even though a trial date in October 2005 has been set in *CEA v. Dell,* Civ. No. 03-484-KAJ (*see* D.I. 106 at 3), neither of these factors weigh strongly against granting a stay under the circumstances presented by these cases.

V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that CEA's Motions to Consolidate in *CEA v. Dell Computer Corp., et al.,* Civ. No. 03-484-KAJ (D.I.89, D.I.142); *CEA v. Tottori Sanyo Electronic Co., Ltd.,* Civ. No. 03-857-KAJ (D.I.10, D.I.27); and *CEA v. Fujitsu Ltd.,* Civ. No. 03-1036-KAJ (D.I.14) are GRANTED IN PART and DENIED IN PART. They are GRANTED to the extent that they seek to consolidate the cases against Samsung Electronics, Fujitsu Display Technologies Corporation and Tottori Sanyo for pretrial and trial purposes, without prejudice to defendants filing motions to sever once the pretrial matters are completed; and in all other respects, CEA's Motions to Consolidate are DENIED. Counsel should confer on an appropriate simplified case caption for the proceeding against the three named manufacturer defendants. It is further ORDERED that CEA's Motions to Consolidate in *CEA v. Best Buy Co., et al.,* Civ. No. 03-931-KAJ (D.I.48, D.I.81) are DENIED. It is further ORDERED that defendants' Motions to Stay the Case in Civ. No. 03-484-KAJ (D.I.93); Civ. No. 03-931-KAJ (D.I.47); and Civ. No. 04-099-KAJ (D.I.16) are GRANTED to the extent that they seek to stay the proceedings against the OEM/distributors and

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                    Page 4
2004 WL 1554382 (D.Del.)
**(Cite as: 2004 WL 1554382 (D.Del.))**

retailers.

  2004 WL 1554382 (D.Del.)

  Motions, Pleadings and Filings (Back to top)

•       1:04CV00099       (Docket)
(Feb. 13, 2004)

•       1:03CV01036       (Docket)
(Nov. 13, 2003)

•       1:03CV00484       (Docket)
(May. 19, 2003)

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2005, I caused the foregoing document to be electronically filed with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

> Thomas C. Grimm, Esquire
> MORRIS, NICHOLS, ARSHT & TUNNELL
> 1201 North Market Street
> Wilmington, DE 19899-1347
> [tgrimm@mnat.com]
> *Attorneys for Defendants, Honeywell International Inc.*
> *and Honeywell Intellectual Properties, Inc.*

I further certify that on April 11, 2005, I caused a copy of the foregoing document to be served by hand on the above-listed counsel, and that a copy was served on the following persons on the date and in the manner indicated:

> ### *By Mail on April 11, 2005*
>
> Frederick L. Cottrell, III, Esquire
> RICHARDS, LAYTON & FINGER
> One Rodney Square
> P.O. Box 551
> Wilmington, DE 19899
>
> Amy Elizabeth Evans, Esquire
> CROSS & SIMON LLC
> 913 North Market Street, Suite 1001
> Wilmington, DE 19801
>
> Thomas L. Halkowski, Esquire
> FISH & RICHARDSON, P.C.
> 919 Market Street, Suite 1100
> Wilmington, DE 19899-1114
>
> Richard L. Horwitz, Esquire
> POTTER ANDERSON & CORROON
> 6th Floor, Hercules Plaza
> 1313 N. Market Street
> Wilmington, DE 19801

Philip A. Rovner, Esquire
POTTER, ANDERSON & CORROON
6th Floor, Hercules Plaza
1313 N. Market Street
Wilmington, DE 19801

Donald W. Huntley, Esquire
HUNTLEY & ASSOCIATES, LLC
1105 North Market Street
P.O. Box. 948
Wilmington, DE 19899-0948

William J. Wade, Esquire
RICHARDS, LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899

Arthur G. Connolly, III, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

John W. Shaw, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Adam W. Poff, Esquire
YOUNG CONAWAY STARGATT & TAYLOR LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391

Francis DiGiovanni, Esquire
CONNOLLY BOVE LODGE & HUTZ LLP
The Nemours Building
1007 North Orange Street
P.O. Box 2207
Wilmington, DE  19899

_____/s/ Karen L. Pascale_____
BOUCHARD MARGULES & FRIEDLANDER, P.A.
Andre G. Bouchard (#2504)
  [abouchard@bmf-law.com]
Karen L. Pascale (#2903)
  [kpascale@bmf-law.com]
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
(302) 573-3500
  *Attorneys for Plaintiff, Optrex America, Inc.*