IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Honeywell International Inc., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Apple Computer, Inc., et al.,<br><br>    Defendants. | C.A. No. 04-1338 KAJ |
| Optrex America, Inc.,<br><br>    Plaintiff<br><br>v.<br><br>Honeywell International Inc., et al.,<br><br>    Defendants. | C.A. No. 04-1536 KAJ |
| Honeywell International Inc., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Audiovox Corporation, et al.,<br><br>    Defendants. | C.A. No. 04-1337 KAJ |

**<u>HONEYWELL'S CONSOLIDATED BRIEF</u>**

**REPLY TO OPTREX'S RESPONSE IN OPPOSITION TO HONEYWELL'S
MOTION FOR CONSOLIDATION AND STAY PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 42 (C.A. No. 04-1338 and C.A. No. 04-1536)**

**REPLY TO DEFENDANTS' RESPONSE TO HONEYWELL'S MOTION TO
CONSOLIDATE AND OPPOSITION TO HONEYWELL'S MOTION TO STAY
(C.A. No. 04-1338)**

**REPLY TO FUJI PHOTO FILM CO., LTD.'S RESPONSE TO HONEYWELL'S MOTION TO CONSOLIDATE, OPPOSITION TO HONEYWELL'S MOTION TO STAY (C.A. No. 04-1338)**

**RESPONSE TO NIKON, PENTAX, AND KYOCERA WIRELESS CORP.'S JOINT MOTION TO STAY CASES PENDING RESOLUTION OF LCD PANEL MANUFACTURERS' CASES (C.A. No. 04-1337 and C.A. No. 04-1338)**

**RESPONSE TO OLYMPUS'S MOTION TO STAY THE ACTION WITH RESPECT TO OLYMPUS (C.A. No. 04-1338)**

**RESPONSE TO NOKIA'S MOTION TO STAY (C.A. No. 04-1337)**

|  |  |
|---|---|
|  | MORRIS, NICHOLS, ARSHT & TUNNELL<br>Thomas C. Grimm (#1098)<br>Leslie A. Polizoti (#4299)<br>1201 N. Market Street<br>P.O. Box 1347<br>Wilmington, DE  19899-1347<br>(302) 658-9200<br>   *Attorneys for Honeywell International Inc.*<br>   *and Honeywell Intellectual Properties Inc.* |

OF COUNSEL:

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Denise S. Rahne
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
111 Huntington Avenue, Suite 1300
Boston, MA 02199
617-267-2300

April 25, 2005

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. NATURE AND STAGE OF PROCEEDING ..................................................................... 3

III. ARGUMENT ....................................................................................................................... 6

    A. Honeywell Has a "Special Interest" in Suing the Named Defendants, Who Are Infringers in Their Own Right ................................................................................... 7

    B. The Named Defendants Will Not Be Prejudiced If They Are Required To Defend This Action ................................................................................................................ 10

    C. Forcing Honeywell To First Try Its Infringement Claims Against The LCD Suppliers Risks Piecemeal Litigation and Jeopardizes Honeywell's Right To Full Recovery ........ 11

II. CONCLUSION .................................................................................................................. 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*,
  133 F. Supp. 2d 354 (D. Del. 2001) ............................................................................. 8

*Bechtel Corp. v. Laborers' Int'l Union*,
  544 F.2d 1207 (3rd Cir. 1976) ..................................................................................... 6

*Cordell Engineering, Inc. v. Picker Int'l., Inc.*,
  540 F. Supp. 1316 (D. Mass. 1982) ............................................................................. 8

*Dentsply Int'l, Inc. v. Kerr Mfg. Co.*,
  734 F. Supp. 656 (D. Del. 1990) .............................................................................. 5, 6

*Elenby Tech., v. Wilson Safe Co.*,
  2002 U.S. Dist. LEXIS 3506 (D. Del. 2002) ............................................................... 8

*Eolas v. Microsoft*,
  399 F.3d 1325 (Fed. Cir. 2005) ................................................................................. 12

*Genentech, Inc. v. Eli Lilly and Co.*,
  998 F.2d 931 (Fed. Cir. 1993) ..................................................................................... 8

*Kahn v. Gen. Motors Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989) ................................................................................... 8

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990) ................................................................................... 8

*Landis v. North American Co.*,
  299 U.S. 248 (1936) ..................................................................................................... 6

*William Gluckin & Co. v. Int'l Playtex Corp.*,
  407 F.2d 177 (2d Cir. 1969) ........................................................................................ 9

**Statutes**

Fed. R. Civ. P. 42 ............................................................................................................... 5

**I.     INTRODUCTION**

Since Honeywell initiated this patent infringement action, no less than six motions have been filed by the defendants and third-party interveners (the "Movants"). Those motions seek to transform this case into something it has never been and should not become. Essentially, the Movants want to override Honeywell's judgment as to who it should sue and how it can best enforce its patent. The Movants' request to supplant Honeywell's presumptive right as a plaintiff is particularly troubling because it jeopardizes Honeywell's ability to obtain full recovery for industry wide infringement of its U.S. Patent No. 5,280,371 (the '371 patent), and to do so within a reasonable time frame.

The Movants' strategy is to equate Honeywell's allegations with those of the French government in the matter of *Commissariat a L'Energie Atomique v. Dell Computer Corp., et al.*, Civil Action No. 03-484-KAJ, currently pending before this Court (the "CEA case"). Despite some superficial similarities between Honeywell's action and the CEA case, there are more fundamental differences between them, both substantive and procedural. Unlike the CEA case, Honeywell did not sue the suppliers of LCD panels nor the retailers who sell the consumer electronics products to end users. Rather, Honeywell has targeted its allegations of infringement against those companies that incorporate LCD panels into particular types of portable consumer electronics. This is because, while the patents asserted in the CEA case address the internal workings of the LCD panel itself, the '371 patent more broadly addresses how light can be more efficiently utilized in certain types of products which employ LCD panels. As the patent itself explains, the claimed invention is particularly useful in applications where it is desirable to concentrate light within a particular range of viewing angles. '371 patent, Col.1, ll. 33-39.

Forcing Honeywell to litigate outside the context of such applications (i.e., products) potentially compromises its ability to obtain "adequate compensation" under the patent statute.

While the Movants are correct that most of the Named Defendants obtain LCD panels from third parties, most of these parties are not currently before this Court, and may never be because of personal and/or subject matter jurisdictional issues. If Honeywell is forced to sue this class of third parties in lieu of the Named Defendants, it faces piecemeal litigation, delay, potential jurisdictional battles, and possibly having to forego obtaining full recovery for industry-wide infringement of its intellectual property, given the foreign nature of LCD supply relationships.

While Honeywell agrees that certain efficiencies may occur if LCD suppliers are allowed to intervene in this action, such efficiencies exist only as a supplement to – not a replacement for – the primary action. In this regard, Honeywell does not outrightly oppose intervention by the LCD suppliers, but simply seeks to ensure that its main action against the Named Defendants not be relegated to secondary status. Even without the LCD suppliers, however, the main action can proceed against the Named Defendants because they have enough information to defend against Honeywell's allegations, as evidenced by their formal denial of Honeywell's infringement allegations in their respective Answers.

Accordingly, Honeywell respectfully submits that the best way to organize this litigation is to allow its claims against the Named Defendants to proceed uninhibited, and indeed aided by the participation of those LCD suppliers who so wish. Such an approach takes advantage of the claimed efficiencies advanced by the Movants, while at the same time not usurping Honeywell's right to address industry-wide infringing activity in the manner it sees fit.

**II.     NATURE AND STAGE OF PROCEEDING**

Honeywell initially filed suit on October 6, 2004, alleging infringement against 33 manufacturers and sellers of consumer electronic end products. At the outset, it bears emphasizing that, although Movants repeatedly focus on the number of defendants named by Honeywell, many share a parent-subsidiary relationship and are represented by the same counsel. When these relationships are taken into consideration, the Named Defendants can be organized into 20 natural groups, as reflected below:

**Case I – Apple, et al.**

1. Apple Computer, Inc.
2. Argus a/k/a Hartford Computer Group, Inc.
3. Casio Computer Group, Inc.
   Casio, Inc.
4. Concord Cameras
5. Dell Inc.
6. Eastman Kodak Company
7. Fuji Photo Film Co., Ltd.
   Fuji Photo Film U.S.A., Inc.
8. Fujitsu Limited
   Fujitsu America, Inc.
   Fujitsu Computer Products of America, Inc.
9. Kyocera Wireless Corp.
10. Matsushita Electrical Industrial Co.
    Matsushita Electrical Corporation of
     America
11. Navman NZ Limited
    Navman U.S.A. Inc.
12. Olympus Corporation
    Olympus America, Inc.
13. Pentax Corporation
    Pentax U.S.A., Inc.
14. Sony Corporation

**Case 2 – Audiovox, et al.**

17. Audiovox Communications Corporation
    Audiovox Electronics Corporation
18. Nikon Corporation
    Nikon Inc.
19. Nokia Corporation
    Nokia Americas
20. Sanyo Electric Co., Ltd.
    Sanyo North America

      Sony Corporation of America

15.   Sony Ericsson Mobile Communications AB
      Sony Ericsson Mobile Communications
       (USA) Inc.

16.   Toshiba Corporation
      Toshiba America, Inc.

     During the final months of last year, Honeywell granted these Named Defendants substantial additional time to answer the Complaint expressly so that they had ample time to perform a full investigation into Honeywell's allegations.  With the exception of Fuji (who has filed a motion to transfer), each of the Named Defendants has filed an Answer to the Complaint, substantively denying any infringement.  As a result, a scheduling conference before the Court has been set for May 16, 2005.  Based upon this joinder of issues and this impending hearing, Honeywell has proposed a schedule to the Named Defendants for discovery and other pretrial activities.

     Since Honeywell filed suit, Optrex, a third-party who supplies LCDs to some of the Named Defendants, has sued Honeywell in this Court, seeking a declaratory judgment that its products do not infringe the '371 patent.  (C.A. No. 04-1536, D.I. 1).  Seiko Epson, another third-party supplier, has sought to intervene in the original action.[1]  (C.A. No. 04-1338, D.I. 136).  Four other third-party suppliers, Philips, Wintek, Samsung SDI, and Curitel, have been

---

[1] While Seiko Epson repeatedly states that it supplies modules to 25 of the defendants, such an assertion is misleading.  It is undisputed that those same 25 defendants receive LCD panels from many other suppliers.  Accordingly, despite Seiko Epson's implications, allowing the case to proceed against Seiko Epson will not resolve this suit against a majority of the defendants.  To the contrary, Honeywell would still need to litigate against the 25 defendants to determine liability and damages for the accused products that incorporate LCD panels from other suppliers.

identified by the Movants in third party complaints,[2] but these entities have not yet appeared in this case. (C.A. No. 04-1338, D.I. 114; C.A. No. 04-1337, D.I. 49). Despite these developments, a substantial number of LCD suppliers believed to supply one or more of the Named Defendants have not even been identified by the Movants as intended third-party defendants. The chart below summarizes these entities[3] and their status:

| LCD Suppliers Appeared in Suit | LCD Suppliers Named in Third Party Complaint | LCD Suppliers Who Have Not Appeared or Been Named |
|---|---|---|
| Optrex<br>Seiko Epson | Curitel<br>Philips<br>Wintek<br>Samsung SDI | Arima Display<br>AU Optronics<br>CPT<br>Hannstar<br>Hitachi<br>Primeview<br>Quanta Display Inc.<br>ST-LCD<br>TM Display<br>Tottori Sanyo |

The Movants' basic position is that Honeywell's action should be recast as a case against LCD suppliers listed above. (C.A. No. 1337, D.I. 61, pp. 12-18). Essentially, the Movants want the claims against the end product manufacturers — who are all currently before this Court — to be stayed, thus forcing Honeywell to litigate against a class of entities who are not all before this Court and who may never be. Honeywell has consistently sought to avoid such *ad hoc*

---

[2] Those third-party complaints also implicate Optrex and Toshiba. Toshiba is a named defendant in the original Honeywell Actions, and Optrex has already sought to participate in this matter.

[3] Honeywell compiled this list based upon information it obtained from its presuit investigation. Since no formal discovery has yet been obtained, the list is likely not comprehensive.

5

participation of third-party suppliers because it could compromise Honeywell's ability to obtain comprehensive relief and create piecemeal litigation.

**III.    ARGUMENT**

The Court's discretion to manage these proceedings has been well established by virtually all of the briefs touching on the issue. *See* Fed. R. Civ. P. 42; *Dentsply Int'l, Inc. v. Kerr Mfg. Co.*, 734 F. Supp. 656, 658 (D. Del. 1990); *Bechtel Corp. v. Laborers' Int'l Union*, 544 F.2d 1207, 1215 (3rd Cir. 1976) (*citing Landis v. North American Co.*, 299 U.S. 248, 254-55 (1936)). In exercising its discretion, the district court must weigh the competing interests of the parties and attempt to maintain an even balance. *Dentsply*, 734 F. Supp. at 658. In maintaining that even balance, "the Court must consider whether there is even a fair possibility that the stay would work damages on another party."[4] *Id*. As a result, there is a presumption that the "first-filed" action should be allowed to proceed, i.e., absent a clear case of hardship or inequity, a stay should generally not be granted. *Id*.

Here, an "even balance" is best maintained by Honeywell's proposal to include the LCD suppliers for pretrial purposes, but to allow its claims against the Named Defendants to proceed to trial first. The reasons for this conclusion are set forth in detail in the subsections below, but all involve Honeywell's right to a full and fair recovery against the products that most fully take advantage of the patented technology. Honeywell's proposal will ensure that this right is not compromised, while still allowing the Named Defendants' assistance, if necessary, in evaluating the components of the LCDs contained in those products.

---

[4]    Despite the protestations by several parties in other briefs, the observations this Court made in *Dentsply* provide sound guidance regarding the management of third-parties variously brought in to the Honeywell Actions. The Movants' attempts to factually distinguish *Dentsply* are ineffective because Honeywell relies upon the general rule set forth in that case, not its particular facts.

### A.   Honeywell Has a "Special Interest" in Suing the Named Defendants, Who Are Infringers in Their Own Right.

Given the "first-to-file" rule, the Movants' request to recast this case should be viewed with skepticism. Honeywell should be entitled to proceed against the Named Defendants unless the Movants can justify the application of an exception to that rule. Recognizing their burden, the Movants attempt to invoke the "customer suit" exception to the "first-to-file" rule, arguing that the Named Defendants are merely customers who do not manufacture the LCDs. This argument is unavailing because Movants incorrectly identify the products accused of infringement in the Complaint, and, in doing so, conspicuously sidestep Honeywell's "special interest" in proceeding against the Named Defendants.

Unlike the CEA case, where the French government accused both the LCD and the products which incorporate such LCDs, Honeywell has directed its allegations only against the end product. This is because the '371 patent is different in some key respects from the two patents in the CEA case. Both of those patents, U.S. Patent No. 4,889,412 and U.S. Patent No. 4,701,028, claim an improved liquid crystal cell;[5] i.e., the claims relate to the inner workings of the LCD panel itself. In marked contrast, Honeywell's '371 patent relates not to the inner workings of the cell itself, but rather relates to how light can more effectively be used in certain types of products employing an LCD panel. This difference in subject matter means that it is the end product which most fully takes advantage of "technology that enables a display to produce a brighter image (making the screen easier to see) without requiring additional power while helping to reduce the appearance of an undesirable interference pattern called the "Moire effect"

---

[5] "Liquid Crystal Cell Using The Electronically Controlled Birefringence Effect And A Uniaxial Medium Of Negative Optical Anisotropy Usable Therein" ('412) and "Liquid Crystal Cell Which Can Have A Homeotropic Structure With Compensated Birefringence Of Said Structure" ('028).

7

on the screen." (C.A. No. 0401338, D.I. 1, ¶ 35; C.A. No. 04-1337, D.I. 39, ¶ 16). An LCD by itself does not fully capitalize on these advantages until it is incorporated into a working end product.

As a consequence, separate and apart from whether the LCDs infringe the '371 patent, they simply are not the accused products in the Honeywell action. The end products named in the Complaint, including laptop computers, cellular phones, and other portable electronic devices directly infringe the '371 patent in their own right and uniquely take advantage of the '371 invention. Given that the Named Defendants set the specifications for these products and further determine how they will be marketed, they are not "mere customers," but rather have important information about their use of the invention. Without their active participation in this case, Honeywell will likely face substantial difficulty in recovering "adequate compensation" by means of a "reasonable royalty", as the patent statute allows.

Such circumstances do not trigger the customer-suit exception.[6] Under well-established law, the customer-suit exception *only* applies to situations where the defendant is merely a customer of the entire infringing product which it simply resells with little additional material. *Kahn v. Gen. Motors Corp.,* 889 F.2d 1078, 1081 (Fed. Cir. 1989) (identifying cases involving

---

[6] Cases cited in various briefs submitted by Defendants and module manufacturers are actually consistent with this general rule, and do not support efforts to characterize the defendant end product manufacturers as "mere customers" for purposes of forcing them into the customer suit exception. Many cases cited in Defendant and module manufacturers' briefs actually followed the first to file rule and only mention the customer suit exception as an existing doctrine. *See, e.g., Genentech, Inc. v. Eli Lilly and Co.,* 998 F.2d 931, 938-39 (Fed. Cir. 1993); *Elenby Tech., v. Wilson Safe Co.,* 2002 U.S. Dist. LEXIS 3506, *6 (D. Del. 2002). Cases cited where the exception was applied, consistent with the analysis within this brief, involved pure customers in the sense that the customer merely purchased a product and resold that product "as is." *See, e.g., Katz v. Lear Siegler, Inc.,* 909 F.2d 1459, 1464 (Fed. Cir. 1990) (gun supply store mere customer of gun manufacturer).

customers who merely resell as appropriate cases for customer suit exception and not applying exception to General Motors for circuitry in stereo receivers in vehicles); *Air Products and Chemicals, Inc. v. MG Nitrogen Services, Inc.*, 133 F. Supp. 2d 354, 357 (D. Del. 2001) (customer suit exception does not apply where defendants are not mere resellers of equipment, but infringe in their own right by incorporating membrane equipment into its unit); *Cordell Engineering, Inc. v. Picker Int'l., Inc.,* 540 F. Supp. 1316, 1318 (D. Mass. 1982) (entity that repackages, warranties, services, sells, and potentially provides design specifications for product more than mere customer in context of customer suit exception). For instance, retailers who buy an infringing product from a manufacturer and resell it as is would be considered a customer for purposes of the customer suit exception. *William Gluckin & Co. v. Int'l Playtex Corp.*, 407 F.2d 177, 177-78 (2d Cir. 1969) (retailer Woolworth found to be mere customer of infringing undergarments).

This is decidedly not the case in the present action where: (1) the accused products are end products made by the Named Defendants, not the LCD suppliers; (2) the Named Defendants actively design, manufacture, market and sell the end products, instead of simply buying them from the LCD suppliers and reselling them to others; and (3) the design, manufacture, and marketing of the accused products are intrinsically tied to the benefits claimed by the '371 patent. Accordingly, the thinly veiled attempts by the Movants to characterize the Named Defendants as mere customers is not supported by the facts or the law.

Finally, the Movants assert that Honeywell's willingness to license its '371 technology to manufacturers is evidence that such entities should be the ones defending this suit. There is no logic behind an assertion that merely because a patent holder sues one class of infringer and is willing to license an entity in another class that the patent holder should be precluded from

9

bringing suit against the first class of infringers. As Defendants well know, Honeywell is open to licensing negotiations with any class of infringer, and is currently negotiating potential licenses with *both* module suppliers and end product manufacturers. Obviously, what a patentee is willing to accept in settlement can often be lower than what it would be entitled to recover after a full trial on the merits. The Movants ignore this basic principle and, in relying upon these settlement negotiations, run afoul of the spirit of Rule 408 of the Federal Rules of Evidence. In any event, since Honeywell filed this suit, it has entered into several license agreements relating to the '371 patent. Honeywell's strategy for this litigation, therefore, is working to *reduce* the number of infringing products, and potentially the number of defendants. Honeywell should not be penalized for such efforts.

**B. The Named Defendants Will Not Be Prejudiced If They Are Required To Defend This Action.**

Curiously, the Movants repeatedly assert that the Named Defendants cannot defend themselves in this litigation because the LCD suppliers better understand the technology involved. (*See,* e.g., C.A. 04-1337, D.I. 61, p. 6; C.A. No. 04-1338, D.I. 162, p. 7). Such arguments are undercut by the following facts:

- With the exception of Fuji, who has yet to Answer, all of the Named Defendants have asserted non-infringement as a defense in their respective Answers. Each of these defendants requested an extension of time to respond to Honeywell's Complaint to allow them time to contact their module suppliers. Since such defenses were made in each and every Answer, it is clear that the defendants either are aware of the design of the LCD panels or have been in discussions with their suppliers to understand the design of the modules.

- Even if the LCD suppliers better understand their products, they are likely to have little or no understanding of the *accused products*, which are the portable consumer electronic end products with the ability to save power while concentrating light with an improved viewing angle.

- The consolidated discovery to which most participants in this case appear to agree would allow sufficient exchange of technical knowledge such that

10

      experts engaged by both sides will be able to understand the LCD's role in the accused products.

- Prior art and validity issues related to the invention claimed in the '371 patent can be managed by any qualified attorney in cooperation with expert consultation. Such would be the case no matter whose infringement was in question. There is no legitimate basis on which to argue that the named defendants are unable to address issues regarding the validity and enforceability of the '371 patent.

For these reasons, the Named Defendants are well-equipped to defend against Honeywell's allegations and are in a far superior position than that of the LCD suppliers to assess the use and benefits of the technology claimed in '371 patent.

      Moreover, the implication on the part of the Movants that the LCD suppliers have a greater motivation to defend this action is unavailing. The history of this litigation to date defies such an assertion. As of this date, only two suppliers – Optrex and Seiko Epson – have appeared willingly in this litigation. Only two of the named defendants – Kyocera and Audiovox Communications Corporation – have asserted third party complaints, and it is unknown whether the three new entities named in those Complaints will contest jurisdiction. These five entities represent no more than one-third of the LCD suppliers implicated by Honeywell's lawsuit.[7] While Optrex and Seiko Epson are certainly entitled to speak on their own behalf, the limited and varied participation by the remaining LCD suppliers rebuts any claim that such suppliers are more motivated to participate in this litigation.

      **C.**     **Forcing Honeywell To First Try Its Infringement Claims Against The LCD Suppliers Risks Piecemeal Litigation and Jeopardizes Honeywell's Right To Full Recovery.**

      As explained above, the LCD suppliers who supply one or more of the Named Defendants can be divided into three groups: two that have actually appeared in suit; four that

---

[7] This does not include those LCD suppliers who have already entered into a license with Honeywell.

11

have been named in a third party complaint but have not yet appeared; and 11 that have not even been named, much less appeared. The Movants largely ignore the third category and focus on the second category. As of the filing of this brief, none of the entities in the second category have appeared in this matter. Since some of these companies are foreign entities[8], it is unclear whether they will submit to the jurisdiction of this Court. To the extent any of them are successful in contesting jurisdiction, Honeywell will have no ability to recover for any infringement regarding the LCDs sold by those suppliers. In that event, Honeywell would inevitably be required to litigate against the end product manufacturers to recover damages for the infringement by products that incorporate those LCDs.

The same concern holds true for the companies in the third category (with the possible exception of Tottori Sanyo, AU and Hitachi who are already before this Court in the CEA case). These entities have not even been named in any pleading, and it would significantly delay this case if Honeywell would have to repeat service of process on these additional companies – many of whom are foreign – and then await their answers. Even taking into consideration those entities who are already involved in the CEA case, a substantial number of the LCD suppliers could avoid having to respond to Honeywell's allegations. In such an event, it would make little sense to force Honeywell to proceed against certain LCD suppliers, but then require Honeywell to proceed against other Named Defendants in circumstances where other LCD suppliers are unavailable. Nor should Honeywell have to put its case on hold until all these jurisdictional issues are resolved. The only way to efficiently capture *all* of the infringement in one suit is to

---

[8]  Philips is based in the Netherlands; Wintek is based in China; and Curitel is based in Korea.; Samsung SDI is based in Korea, but appears to have submitted to the Court's jurisdiction in the CEA case.

allow Honeywell's action against the Named Defendants – who are all before this Court *now* -- to proceed first.

Even if *all* of the LCD suppliers somehow found their way into this litigation, forcing Honeywell to proceed against them would still likely create piecemeal litigation. The United States Patent Laws generally cover only activity occurring in the United States.[9] As Nikon states in its brief, the LCDs it uses in its products are purchased in Japan or Singapore. *Id.* (C.A. No. 04-1337, D.I. 61, p.9). If Nikon's situation is typical, the sales of the LCDs to the Named Defendants also occur overseas. In that event, it is likely that the module manufacturers will argue that those sales are outside the scope of the United States patent laws and thus should not be included in any royalty base. In such an event, Honeywell might have to forego any recovery for what could be a substantial portion of the activity in question unless it proceeded against the end product manufacturers once the case against the LCD suppliers is resolved. Such piecemeal litigation is inefficient and unfair to Honeywell. Therefore, the only way that Honeywell can efficiently capture all of the industry's infringement in one suit is to allow the case to proceed to trial against the end product manufacturers.

## II.     CONCLUSION

There are important differences between the present litigation and the CEA case. These differences are not serendipitous, but instead are the result of conscious decisions which were made by Honeywell to ensure that it could obtain as complete and fair a recovery on its '371 patent without becoming embroiled in jurisdictional maneuverings and without risking piecemeal litigation. A complete and fair recovery is most likely if Honeywell has access to the parties who

---

[9]     This is the general rule. The United States Patent Laws recognize exceptions in circumstances widely distinguishable from the present case. *See, e.g., Eolas v. Microsoft*, 399 F.3d 1325 (Fed. Cir. 2005).

best understand the unique advantages derived from using the claimed technology, and who can account for the fullest range of infringing activity. These criteria are satisfied by the class of Named Defendants who are currently before this Court. Forcing Honeywell to essentially replead its case against a different class of parties will not only unfairly delay these proceedings but also potentially deprive Honeywell of the ability to capture all the infringing activity and to present evidence justifying a royalty rate that fairly accounts for the dynamic use of its invention. For these and all the foregoing reasons, Honeywell respectfully submits that its claims against the Named Defendants should not be stayed, and that any LCD supplier who wishes to take part in these proceedings be allowed to do so as long as its claims are not tried until after Honeywell's claims against the Named Defendants are resolved.

MORRIS, NICHOLS, ARSHT & TUNNELL

OF COUNSEL:

Martin R. Lueck
Matthew L. Woods
Stacie E. Oberts
Denise S. Rahne
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN  55402-2015
(612) 349-8500

Anthony A. Froio
Marc N. Henschke
ROBINS, KAPLAN, MILLER
  & CIRESI L.L.P.
111 Huntington Avenue, Suite 1300
Boston, MA 02199
617-267-2300

April 25, 2005
462126

       /s/ Thomas C. Grimm
Thomas C. Grimm (#1098)
Leslie A. Polizoti (#4299)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
  *Attorneys for Honeywell International Inc.*
  *and Honeywell Intellectual Properties Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 25, 2005, I electronically filed the foregoing document with the Clerk of Court using CM/ECF, which will send notification of such filing to the following:

Frederick L. Cottrell, III
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
[cottrell@rlf.com]
*Attorneys for Eastman Kodak Company*

William J. Wade
RICHARDS LAYTON & FINGER
One Rodney Square
P.O. Box 551
Wilmington, DE 19899-0551
[wade@rlf.com]
*Attorneys for Matsushita Electrical Industrial Co. and Matsushita Electrical Corporation of America*

Thomas L. Halkowski
FISH & RICHARDSON P.C.
919 N. Market Street, Suite 1100
P.O. Box 1114
Wilmington, DE 19899-1114
[halkowski@fr.com]
*Attorneys for Apple Computer, Inc., Casio Computer Co., Ltd., and Casio, Inc.*

John W. Shaw
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
[jshaw@ycst.com]
*Attorneys for Olympus Corporation, Olympus America, Inc., Sony Corporation and Sony Corporation of America*

Richard L. Horwitz
David E. Moore
POTTER ANDERSON
  & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, DE 19899
[rhorwitz@potteranderson.com]
*Attorneys for Concord Cameras, Dell Inc., Fujitsu Limited, Fujitsu America, Inc., Fujitsu Computer Products of America, Inc., Toshiba Corporation, Toshiba America, Inc., and Wintek Electro-Optics Corporation*

Adam Wyatt Poff
YOUNG CONAWAY STARGATT
  & TAYLOR LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
[apoff@ycst.com]
*Attorneys for Pentax Corporation and Pentax U.S.A., Inc.*

| | |
|---|---|
| Philip A. Rovner<br>POTTER ANDERSON<br>  & CORROON LLP<br>Hercules Plaza, 6th Floor<br>1313 N. Market Street<br>P.O. Box 951<br>Wilmington, DE  19899<br>[provner@potteranderson.com]<br>*Attorneys for Fuji Photo Film Co..*<br>*Ltd. and Fuji Photo Film U.S.A., Inc.* | Francis DiGiovanni<br>James M. Olsen<br>CONNOLLY, BOVE, LODGE<br>  & HUTZ<br>The Nemours Building, 8th Floor<br>1007 N. Orange Street<br>P.O. Box 2207<br>Wilmington, DE  19899<br>[fd@cblh.com]<br>*Attorneys for Sony Ericcson Mobile*<br>*Communications AB and Sony Ericcson*<br>*Mobile Communications (USA) Inc.* |
| Arthur G. Connolly, III<br>CONNOLLY, BOVE, LODGE<br>  & HUTZ<br>The Nemours Building, 8th Floor<br>1007 N. Orange Street, P.O. Box 2207<br>Wilmington, DE  19899<br>[ac3@cblhlaw.com]<br>*Attorneys for Navman NZ Limited*<br>*and Navman U.S.A. Inc.* | Amy Evans<br>CROSS & SIMON<br>913 N. Market Street, Suite 1001<br>P.O. Box 1380<br>Wilmington, DE  19899-1380<br>[aevans@crosslaw.com]<br>*Attorneys for Argus a/k/a Hartford*<br>*Computer Group, Inc.* |
| Donald W. Huntley<br>HUNTLEY & ASSOCIATES, LLC.<br>1105 North Market Street, Suite 800<br>P.O. Box 948<br>Wilmington, DE  19899-0948<br>[huntley@monopolize.com]<br>*Attorneys for Kyocera Wireless Corp.*<br>*and Seiko Epson Corporation* | Andre G. Bouchard, Esquire<br>Karen L. Pascale, Esquire<br>BOUCHARD MARGULES<br>  & FRIEDLANDER, P.A.<br>222 Delaware Avenue, Suite 1400<br>Wilmington, DE  19801<br>[abouchard@bmf-law.com]<br>*Attorneys for Third-Party Defendant*<br>*Optrex America, Inc.* |

                                              */s/ Thomas C. Grimm*
                                               Thomas C. Grimm (#1098)

462126